UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| JULIET MAKUCH,<br>      Plaintiff,<br><br>      v.<br><br>CENTREVILLE BANK,<br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 25-cv-438-JJM-AEM |

## ORDER

Plaintiff Juliet Makuch brings claims for sex discrimination, retaliation, and hostile work environment against Defendant Centreville Bank under Title VII of the Civil Rights Act of 1964 (Title VII), the Rhode Island Civil Rights Act (RICRA), and the Rhode Island Fair Employment Practices Act (FEPA).  Centreville moves to dismiss Counts VII, VIII, and IX for hostile work environment.  ECF No. 6.

## I.    BACKGROUND

On November 28, 2022, Ms. Makuch was hired at Centreville Bank as Social Media & Digital Marketing Manager.  ECF No. 1 ¶ 12.  About ten months later, Ms. Makuch's original reporting manager was fired, and she began reporting to Josh Varone, Senior Vice President of Human Resources, for two months.  *Id.* ¶¶ 15, 16.  Thereafter, she began reporting to Vanessa Marszalek.  *Id.* ¶ 18.  Ms. Makuch received positive performance reviews from her original reporting manager and Mr. Varone did not raise any issues or concerns regarding her performance while under his management.  *Id.* ¶¶ 13, 17.  Ms. Marszalek also gave her an

"overwhelmingly positive" performance review at her year-end review and subsequently raised her salary. *Id.*

Personally, Ms. Makuch was engaged to be married and talked to her coworkers about her intent to become pregnant and start a family. *Id.* ¶¶ 21, 23. On or about March 20, 2024, she found out she was pregnant. *Id.* ¶ 24. Concerned about her health and the health of her very early pregnancy at the time, Ms. Makuch reported concerns to Facilities and Operations that Ms. Marszalek was coming into the office while sick. *Id.* ¶¶ 25, 26. Two weeks later, two other colleagues in supervisory roles, whom Ms. Makuch had not disclosed her pregnancy to, inquired about her being pregnant. *Id.* ¶¶ 27, 28.

Four days later, on April 15, Ms. Marszalek informed Ms. Makuch that she was being demoted with a reduction in pay because she did not view her as a manager, with no further assessment. *Id.* ¶ 29. Ms. Makuch almost immediately began communicating with her former manager, Mr. Varone, and another Human Resources employee requesting reconsideration of her demotion. *Id.* ¶ 30; *See* Ex. 2. In this email, she disclosed her pregnancy and expressed to them that she was concerned that a demotion would negatively impact her growing family. *Id.*

Ms. Makuch, Mr. Varone, and Ms. Marszalek met a week later, and they told her the reason for the demotion was because of a "reorganization" unrelated to her performance. *Id.* ¶ 32. That same day she received an email with the terms of her demotion and reduced salary. *Id.* ¶ 34. Ms. Makuch was provided with the condition

that she either accepts the demotion or leave Centreville with a severance package. *Id.* ¶ 35.

Ms. Makuch declined the demotion, expressed her confusion about the unknown reorganization, and her concern that the reason given was questionable considering Centreville management's recent knowledge of her pregnancy. *Id.* ¶ 38. On April 29, she met with Human Resources and again informed them she was declining the demotion. *Id.* ¶¶ 39, 40. She followed up days later with an email summarizing the alleged discriminatory events, stating that she was discriminated against based on her pregnancy, Centreville blatantly dismissed her requests for further explanation, and that "the stress, pain and suffering of the past few weeks has not been good for [her] or [her] baby." *Id.* ¶ 43. On May 3, she resigned from her employment. *Id.* ¶ 47.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A claim is plausible when the pleaded facts allow the court to draw a "reasonable inference that the defendant is liable for the misconduct alleged" and must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 663, 678. In assessing plausibility, the court must accept all well-pleaded factual allegations as true, but it need not credit legal conclusions or "threadbare recitals of the elements of a cause of action." *Id.* at 678. The plausibility

3

inquiry is context specific and requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

## III.   DISCUSSION

Centreville moves for partial dismissal of Ms. Makuch's complaint, focusing on the three counts alleging hostile work environment.  The Court will therefore limit its discussion to those legal claims and Ms. Makuch's allegations thereon.

### A.   Hostile Work Environment Standard[1]

Centreville bases its motion to dismiss on the fact that Ms. Makuch's complaint fails to plausibly allege any harassment based on sex and the requisite severity or pervasiveness to state a claim for hostile work environment.  For a plaintiff to succeed in a hostile work environment claim she must plausibly allege that: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment; (5) the conduct was both objectively and subjectively offensive; and (6) there is a basis for employer liability. *See O'Rourke v. City of Providence*, 235 F.3d 713, 728 (1st Cir. 2001) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-89 (1998); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 20-23 (1993)).  Centreville in

---

[1] Courts analyze hostile work environment claims brought under Title VII, the RICRA, and RIFEPA under the same substantive standards. *See, e.g.*, *Rathbun v. Autozone, Inc.*, 361 F.3d 62, 71 (1st Cir. 2004) (analyzing RICRA and FEPA claims under the same framework as Title VII); *see also DeCamp v. Dollar Tree Stores, Inc.*, 875 A.2d 13, 21 (applying the same standard in a disparate treatment employment discrimination case under Title VII, RICRA, and FEPA).

its briefing does not dispute for the purposes of its motion to dismiss that she was a member of a protected class, that the conduct was both objectively and subjectively offensive, and that there is a basis for employer liability, so the Court will focus its analysis on whether she was subjected to unwelcome harassment based on her protected status and whether that harassment was severe or pervasive.

### 1. Unwelcome Harassment Based on Sex/Pregnancy

Centreville argues that Ms. Makuch fails to allege harassment but frames her demotion as a "discrete personnel decision framed as a reorganization." Ms. Makuch argues that Centreville mischaracterizes her allegations as a single discrete action of a demotion when she experienced a series of harassing incidents.

Ms. Makuch alleges that over the span of about forty days, beginning on March 24, 2024, when she disclosed her pregnancy to Facilities and Operations, until her resignation on May 3, she experienced a pattern of conduct that constitutes unwelcome sex-based harassment. When she disclosed her pregnancy based on her workplace safety concerns, she received unwelcome pregnancy-related comments and speculation from supervisors, notice of her demotion with no explanation, conflicting reasons for her demotion, Human Resources personnel repeatedly dismissed her complaints of pregnancy discrimination, and finally an ultimatum to accept the demotion or lose her job. Ms. Makuch argues that in totality, these allegations make up a series of pregnancy-related harassing acts that eventually resulted in the termination of her employment. The Court agrees that a change in treatment of an employee tied to a protected status may satisfy the element of harassment based on

5

sex. *See Danna v. R.I. Sch. of Design*, C.A. No. 21-188-JJM-PAS, 2022 WL 1538881, at *3 (D.R.I. May 16, 2022) (holding that the employer's actions of attempting to dissuade her from taking the position, changing her job description, and bullying her thereafter upon learning she had a child and husband meets the second element of hostile work environment). Centreville argues that Ms. Makuch's demotion was an isolated incident, which is "not sufficient to create actionable harassment," *see O'Rourke*, 235 F.3d at 729, but the Court finds that, when it accepts Ms. Makuch's factual allegations as true, she has sufficiently alleged a pattern of conduct that is tantamount to harassment.

### 2. Severity or Pervasiveness

Centreville next argues that even if the Court were to find that the demotion was harassment, that conduct was not "severe or pervasive" because it was limited to two pregnancy-related comments and an adverse employment action. Centreville argues that Ms. Makuch's allegations resemble the type of discrete employment decisions that courts have declined to treat as actionable and thus do not plausibly rise to the level of severity or pervasiveness necessary to sustain a claim for hostile work environment. Ms. Makuch alleges that the intense focus for forty days on her pregnancy and its alleged effect on her future with the bank are sufficient to meet the severe and/or pervasive element on a motion to dismiss.

There is no "mathematically precise test" that courts employ to analyze the question of severe or pervasive, however, the factfinder may consider a broad range of conduct that can contribute to meeting this element under a hostile work

6

environment claim.  *Gerald v. Univ. of Puerto Rico*, 707 F.3d 7, 18 (1st Cir. 2013);

*O'Rourke*, 235 F.3d at 729; *see also Conto v. Concord Hosp., Inc.*, 265 F.3d 79, 81 (1st

Cir. 2001) (stating that a hostile work environment claim "necessarily entail[s] a fact

specific assessment of all the attendant circumstances").  Rather than focusing on the

acts Centreville argues are discreet, the Court must assess the totality of the

circumstances, considering "the frequency of the discriminatory conduct; its severity;

whether it is physically threatening or humiliating, or a mere offensive utterance;

and whether it unreasonably interferes with an employee's work performance."

*O'Rourke*, 235 F.3d at 729 (quoting *Harris*, 510 U.S. at 23).  "[A] worker need not be

propositioned, touched offensively, or harassed by sexual innuendo in order to have

been sexually harassed," *Montalvo-Figueroa v. DNA Auto Corp.*, 414 F. Supp. 3d 213,

244 (D.P.R. 2019) (quoting *Billings v. Town of Grafton*, 515 F.3d 39, 48 (1st Cir.

2008)), and conduct need not be both severe and pervasive—it is sufficient to

plausibly allege only one of those factors.  *Nieves-Borges v. El Conquistador

Partnership, L.P., S.E.*, 936 F.3d 1, 10 (1st Cir. 2019) (stating the two are "alternate

criteria" for evaluating a hostile work environment claim).

Here, Ms. Makuch plausibly alleges a series of incidents that name specific

actors and dates on which the harassing conduct occurred.  The dramatic reversal in

treatment almost immediately following her pregnancy announcement detrimentally

altered the conditions of Ms. Makuch's employment.  The unwelcome pregnancy

comments, inquiries into her pregnancy, and contradicting explanations about her

demotion equate to repeated inappropriate conduct that ultimately led to the severe

consequences of the demotion, pay cut, and her constructive discharge from her employment. Therefore, the Court finds that based on the totality of the circumstances, the rate of escalation paired with the nature of the harassing conduct that ultimately led to a demotion, when accepted as true, plausibly supports a reasonable inference that Centreville's conduct was severe or pervasive.

## IV. CONCLUSION

For these reasons, the Court finds that Ms. Makuch has plausibly alleged facts sufficient to state a claim for a hostile work environment and thus DENIES Centreville's 12(b)(6) Motion to Dismiss. ECF No. 6.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

April 1, 2026

8